CLEARWATER CORPORATION, A NEBRASKA CORPORATION, ET AL., APPELLEES, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION OF THE STATE OF NEBRASKA, APPELLANT.

277 N. W. 2d 236

Filed April 3, 1979. No. 41890.

Dixon G. Adams, for appellant.

Thomas F. Dowd, P.C., for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, CLINTON, and WHITE, JJ., and KNAPP, District Judge.

PER CURIAM.

This is an appeal in a proceeding in eminent domain. The defendant, City of Lincoln, Nebraska, condemned a 122.037-acre tract of land in Sarpy County, Nebraska, owned by the plaintiff, Clearwater Corporation, for use as a water well field. The petition for the appointment of appraisers was filed in the county court on December 8, 1976.

The land condemned was part of a 180-acre tract owned by the plaintiff. It is situated along the east bank of the Platte River south of U. S. Highway No.

6 and north of Interstate Highway No. 80. The land was zoned for agricultural use. Approximately 65 to 80 acres of the land was tillable. There is a 20-acre lake on the property not taken which was formed when gravel was pumped at the time the interstate highway was being constructed. There are three cabins located on the property not taken.

The appraisers appointed by the county judge fixed the damages at $395,235.50. The defendant appealed to the District Court where the jury returned a verdict for $522,700. The defendant has appealed.

The assignments of error relate to evidentiary matters. The defendant contends the trial court erred in refusing to permit the defendant to show the amount which the plaintiff paid for the property, and in permitting the jury to consider the testimony of plaintiff's two expert witnesses.

As a part of its case the defendant called as a witness Joe Koziol, the president of the plaintiff. Koziol testified that the plaintiff purchased the 180 acres on April 20, 1971, from a Mrs. Short. He further testified that the physicial condition of the property now was approximately the same as in 1971 except some additional land had been cleared for farming. The access road to the property had been improved, some additional roads had been built on the property, and electric power lines had been installed around the property. Koziol estimated that land values had appreciated approximately 140 percent since 1971 but that economic conditions generally were about the same. When the defendant inquired as to the price paid for the property, an objection on the basis of foundation was sustained. The defendant made no offer of proof but a motion in limine filed by the plaintiff indicated the purchase price was $90,000. The motion further alleged that the seller had no immediate family and the property had not been placed on the market, but the seller had offered the property to Koziol whom the sell-

er had known since he was a child.

Generally, evidence as to the sale of the identical property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. Roush v. Nebraska P. P. Dist., 189 Neb. 785, 205 N. W. 2d 519.

Here the evidence did not show the circumstances surrounding the sale. A contention had been made that the sale was not an arms length transaction and there was no evidence to show what the circumstances were surrounding the sale. The sale had occurred more than 5 years previously, there had been some improvement made to the property, and there had been a substantial rise in property values.

The trial court has a wide discretion as to whether evidence as to particular sale is admissible. Morehead v. State, 195 Neb. 31, 236 N. W. 2d 623. The defendant's experts testified that the value of the entire tract was $252,000 and $292,050 respectively. Under these circumstances, evidence that the property had sold for $90,000 5 years earlier would have been of little probative value.

The objection as to foundation was meritorious and the ruling was clearly within the discretion of the trial court.

The plaintiff's first expert witness was Joseph Gerald Strawn, a licensed real estate appraiser. Strawn testified over objection that the land taken had a value of $3,650 per acre or $445,435 and that the damages to the remainder amounted to $95,638, the total damages being $542,000.

Strawn testified that the highest and best use of the property was for gravel mining followed by development and use for recreational purposes. Over

objection he was permitted to testify that he considered that 13,974,693 cubic yards of gravel could be removed from the land over a 40-year period at a royalty of 11 cents per cubic yard. In making this calculation the witness assumed there was 70 feet of gravel available in the 122.037 acres. This would be a production of approximately 350,000 cubic yards per year for 40 years. The witness was not qualified as a geologist and based his estimate of the gravel supply upon test wells that had been drilled upon adjacent property and his knowledge of the lake on the property, which had been dredged to a depth of 55 to 60 feet.

Strawn also testified that he considered sales of lots in developed recreational areas in reaching his opinion as to the value of the plaintiff's land.

Strawn further testified that he considered five sales of property in the area which he considered to be comparable sales. Of these he admitted that four were not arms length transactions involving a willing buyer.

The first sale was a 150-acre tract approximately 10 miles east of the plaintiff's land. This property had been used for gravel mining and the lake was in existence at the time of the sale in 1973 or 1974. This property had sold for $2,083 per acre.

The second sale was a tract purchased by the city of Papillion as a well field. Upon objection by the defendant the witness was not allowed to testify further in regard to this transaction.

The third sale was an 83-acre tract near Yutan, Nebraska, in eastern Saunders County, that had been purchased by Metropolitan Utilities District for well field purposes.

The fourth sale was a 25-acre tract located near the property involved in the first sale which had been purchased by the city of Papillion.

The fifth sale was a 150-acre tract located 3 miles northeast of Yutan, Nebraska, to Metropolitan Utili-

ties District. This was rough land suitable for pasturage but containing a large deposit of gravel.

On cross-examination the witness testified there had been no gravel mining on the property since 1965 and the only gravel mining in the immediate area was by the operator of a ready-mix business in Gretna, Nebraska. The cost of hauling gravel amounted to 6 to 10 cents per ton mile.

The defendant produced evidence that the entire production of gravel in Sarpy County for 1973 and 1974 was less than the 700,000 yards that the witness had assumed could be produced in a 2-year period from the plaintiff's land.

The plaintiff's second expert witness was James W. Warren, also a licensed real estate appraiser. Warren testified over objection that it was his opinion that the land taken had a value of $5,025 per acre or $613,235 and the damages to the remainder amounted to $115,926, the total damages being $708,281.

Warren testified the highest and best use of the plaintiff's property was for gravel production followed by recreational development. The witness testified he considered sales of lots in developed recreational and residential areas along the river in arriving at his opinion as to the value of the plaintiff's land. This witness estimated the available gravel on the plaintiff's land to be something around 10 million cubic yards on which there would be a royalty of 10 to 11 cents a yard.

On cross-examination the witness testified he considered the comparable sales method as the most reliable method to value land, but in this case he believed the plaintiff's land was unique so he used a factors approach to determine its value. However, in a report prepared for the plaintiff, the witness used a comparable sales method to value the property. In addition to the sales testified to by Strawn, the witness used two sales north of the plaintiff's

property at $1,000 per acre and a sale in Douglas County, Nebraska, for $1,660 per acre.

The defendant moved to strike the testimony of the plaintiff's expert witnesses, which motions were overruled. The motions were renewed at the close of the evidence and again were overruled. The motions were made upon the ground that the opinions of the two witnesses were based upon improper and invalid assumptions and considerations, and upon facts not in evidence and which were beyond the knowledge and expertise of the witness; that the opinions assumed facts not in evidence; and that the opinions and testimony were so speculative and conjectural as to have no probative value. The defendant's principal assignments of error relate to the testimony of the plaintiff's expert witnesses and the rulings on the defendant's objections and motions to strike the testimony.

It is fundamental that the plaintiff's burden to prove the nature and amount of its damages can not be sustained by evidence which is speculative and conjectural.

Under prior law an expert witness testifying from observation or personal knowledge was ordinarily required to disclose and testify to the facts on which his opinion was based. Duling v. Berryman, 193 Neb. 409, 227 N. W. 2d 584. The opinion of an expert witness lacked probative value if the assumptions for it were shown to be not true. Blobaum v. State, 179 Neb. 304, 137 N. W. 2d 855.

The value of the opinion of an expert witness was dependent on, and was no stronger than, the facts on which it was predicated. Such an opinion had no probative force unless the assumptions upon which it was based were shown to be true. Magdaleno v. Nebraska Panhandle Community Action Agency, 195 Neb. 783, 241 N. W. 2d 114; Pueppka v. Iowa Mutual Ins. Co., 165 Neb. 781, 87 N. W. 2d 410.

Section 27-705 (1), R. R. S. 1943, now provides:

"(1) The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Under section 27-705, R. R. S. 1943, an expert witness may "give his reasons" at the time he is allowed to testify as to his opinion, but he is not required to testify to "the underlying facts or data" before stating his opinion unless the trial court requires otherwise. In this case the plaintiff's expert witnesses were permitted to testify as to their opinion on value with little or no prior proof of the "reasons" for their opinions. The reasons and underlying facts and data were then developed on further direct and cross-examination of the witnesses.

This does not mean that an expert witness is no longer required to disclose the basis for his opinion if required to do so by the trial court or that the jury is entitled to consider the opinion of an expert witness if cross-examination discloses there is no adequate factual basis for the opinion.

In a recent opinion, Northern Nat. Gas Co. v. Beech Aircraft Corp., *ante* p. 300, 275 N. W. 2d 77, we held that the testimony of a witness, otherwise qualified as an expert, was properly excluded where it was speculative. In that case we said: "While under our rules of evidence the expert may not be required to disclose the underlying facts or data before rendering his opinion, the trial court on its own motion can require such disclosure. § 27-705, R. R. S. 1943. In this case the trial court made such a requirement, and upon hearing what the expert proposed to testify, concluded that neither the record nor the apparent qualifications of the expert would justify such an opinion. * * * The record in this case is totally devoid of any evidence that an expert in weather would attempt to render an opinion such as

that sought to be tendered by appellant's expert herein; or that the information relied upon by the expert was of such type that an expert on weather would rely upon such information in rendering an opinion. In the absence of such evidence we agree with the trial court that any opinion tendered by the expert in this case would be based on pure speculation and be solely without any basis or foundation. The action of the trial court in sustaining the objection to the opinion was in all respects correct."

Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. The witness should not be allowed to express an opinion on an inadequate basis or in respect to facts not disclosed to the jury. Gilbert v. Gulf Oil Corporation, 175 F. 2d 705 (4th Cir., 1949). See, also, Horton v. W. T. Grant Co., 537 F. 2d 1215 (4th Cir., 1976); Wilson v. Volkswagen of America, Inc., 561 F. 2d 494 (4th Cir., 1977); Polk v. Ford Motor Co., 529 F. 2d 259 (8th Cir., 1976); Omaha Indian Tribe, Treaty of 1854, Etc. v. Wilson, 575 F. 2d 620 (8th Cir., 1978); Tabatchnick v. G. D. Searle & Company, 67 F. R. D. 49. Where the opinion testimony of an expert witness does not have a sound and reasonable basis it should be stricken. Arkansas-Missouri Power Co. v. Sain, 262 Ark. 326, 556 S. W. 2d 441.

The witness Strawn based his opinion upon three principal factors: The value of the gravel deposits upon the property; sales of lots in developed recreational areas; and comparable sales of real estate. None of these factors supported the conclusion testified to by the witness.

The testimony concerning the quantity of the gravel in place and its effect upon the value of the land was at best conjectural and speculative. The quantity which the witness assumed was available for mining from the plaintiff's land was excessive

from a number of aspects because no allowance was made for slope, deviations in depth and quality, gravel already mined, and surface acreage that would be reserved for recreational use and development. There was no adequate proof by competent expert testimony from which the jury could conclude, with any degree of reliability, how much gravel could be removed from the property under the witnesses' theory of use and development of the property. Furthermore, there was no reliable evidence of any present demand for gravel to be mined from this property, or that it could be economically mined under present conditions of demand and transportation cost.

The evidence of the market value of lots in developed recreational areas had but a remote connection to the value of the plaintiff's land in an undeveloped state. The principal effect of this evidence was to show there was some demand for recreational property.

None of the sales used by the witness as comparable sales supported his conclusion that the plaintiff's land had a market value of $3,650 per acre at the time of the taking.

An analysis of the basis testimony shows that it did not support the value testified to by this witness. The motion to strike should have been sustained and the jury not permitted to consider the testimony as to value.

A similar situation existed as to the testimony of the witness Warren. Although this witness was not as precise in stating the underlying facts and data on which his opinion was based, the record shows his testimony as to value had no adequate basis and the motion to strike his testimony should have been sustained.

It is unnecessary to consider the other assignments of error.

The judgment of the District Court is reversed

and the cause remanded for a new trial.

REVERSED AND REMANDED FOR
A NEW TRIAL.