WENDELL R. WENTLING, SURVIVING SPOUSE AND
ADMINISTRATOR OF THE ESTATE OF DORTHA ANN
WENTLING, DECEASED, APPELLANT, V. DAVID E. JENNY,
M.D., AND B. M. STEVENSON, M.D., APPELLEES.

293 N. W. 2d 76

Filed June 3, 1980.  No. 42628.

John T. Carpenter and James R. Coe of Carpenter, Fitzgerald & Coe, P.C., for appellant.

Harold W. Kay and Stephen W. Kay of Kay & Satterfield, and Knapp, Mues & Sidwell, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is a medical negligence action brought by Wendell R. Wentling as surviving spouse and as administrator of the estate of his deceased wife, Dortha Ann Wentling, against David E. Jenny, M.D., and B. M. Stevenson, M.D., alleging that the defendants were negligent in failing to timely diagnose and treat carcinoma of the right breast.  The jury returned a verdict in favor of both defendants against the plaintiff.  Plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was overruled.  For

the reasons stated herein, the verdict is set aside and a new trial is ordered.

It is not necessary to review in detail all the facts involved in the foregoing incident. The essential facts are as follows.

The decedent was under the care of Dr. Jenny, a family practitioner in Alma, Nebraska, from June 1972 through December 1974. Dr. Jenny found a mass in decedent's right breast in April 1974, cysts in June 1974, and an enlarged axillary node in October 1974. Dr. Jenny referred the decedent to Dr. Stevenson, a general surgeon practicing principally at the Kearney Clinic, Kearney, Nebraska. Dr. Stevenson first saw the decedent as an outpatient in Alma, Nebraska, in April 1974. At that time he found cysts in the decedent's breast. In October 1974, he also detected the enlarged axillary node. Prior to the examination, Dr. Stevenson did not receive any history from Dr. Jenny as to decedent's complaints or of her past medical history. During their joint medical care, which continued for approximately 8 months, the physicians did not discuss the care and treatment of the decedent's condition with each other. The record discloses that neither doctor undertook biopsies nor any clinical diagnostic means to determine the nature of Mrs. Wentling's condition.

In December 1974, the decedent sought medical advice from Dr. Charles G. Gross in Cambridge, Nebraska. This physician performed a biopsy which established carcinoma of the breast. After various surgical procedures and radiation treatments, Mrs. Wentling died on December 3, 1975.

During the course of the trial, expert testimony was given by Dr. Robert Brittain, a surgeon licensed in Colorado, and certified by the American Board of Surgeons. He testified that he practiced general surgery for approximately 17 years and during that time he diagnosed and treated females afflicted with cancer of the breast. Dr. Brittain stated he was

acquainted with the accepted medical standards of medical practice in communities like Alma, Nebraska, as they existed in 1974 and 1975. While he was in private practice in Colorado, he received referrals from Nebraska physicians on patients with particular reference to female patients with cancer. In addition, he instructed medically, general practitioners, general surgeons, and family doctors from the State of Nebraska as well as performed breast surgery in communities similar to Alma, Nebraska.

Defense counsel objected to Dr. Brittain's competency to testify to the standard of care required in Alma, Nebraska. The objection was sustained and an offer of proof was made. It was Dr. Brittain's opinion that neither Dr. Jenny nor Dr. Stevenson met the standard of recognized medical care in Alma, Nebraska, in that they allowed, for approximately 130 days, the patient to go untreated, unadvised, and with no interim examination. Furthermore, the doctors were professionally negligent in not undertaking an immediate biopsy or any clinical diagnostic means to determine the nature of the lymph node but permitted the patient to leave unattended with the only instructions to be reexamined in 2 or 3 weeks.

The record further indicates that Dr. Brittain would have testified that in April 1974, it was his opinion the decedent had a 95 percent to a 100 percent chance of cancer. If the cancer had been properly diagnosed and treated, the decedent would have had a 75 percent survival rate. By May 1974, there was a 100 percent chance of cancer with a survival rate of 70 percent. If the cancer had been properly diagnosed and treated in June 1974, the decedent would have had a survival rate of between 85 percent and 68 percent. And finally, Dr. Brittain would have stated that if the cancer had been treated in October 1974, the decedent would have had a 15 percent chance of survival.

Dr. Brittain would have stated, according to the offer of proof, that there had evolved a national rather than local or geographical standard of medical care in treatment of cancer of the breast. Such a malady is treated the same whether the recipient of the disease and the location of the treatment is in Miami, Florida, or Alma, Nebraska.

While plaintiff assigns several errors, this review is limited to the court's refusal to allow plaintiff's medical expert, Dr. Robert Brittain, to testify about the accepted standard of medical care required of the practice of medicine in Alma, Nebraska.

In light of Dr. Brittain's testimony that he performed breast surgery in rural towns similar to Alma, Nebraska, and that he took referrals from doctors in western Nebraska, he demonstrated sufficient knowledge to testify to the standard of care of the community where defendants' acts were performed. Even if the "locality" rule is applied, that rule requires only that the expert have knowledge of the defendant's community, not that he have actually practiced in the area. "There are no state lines recognized in the Nebraska rules which speak in terms of 'similar localities' and 'similar communities.' " *Kortus v. Jensen,* 195 Neb. 261, 269, 237 N.W.2d 845, 850 (1976).

Not only did Dr. Brittain demonstrate sufficient knowledge to testify because of his background and contacts with rural towns similar to Alma, but the nature of the disease and its treatment further supports Dr. Brittain's competence to testify. Cancer is a commonly prevailing disease with common characteristics. If practices within a certain specialty do not vary significantly throughout the country, there is no policy justification for the locality rule.

"We recognize that medical standards of care and skill are becoming national, rather than local or regional." *Id.*

Another factor contributing to Dr. Brittain's competency to testify is his status as a certified specialist. Both Dr. Stevenson and Dr. Brittain are certified by the American Board of Surgeons. To become a member, a physician must complete requirements in his specialty. The same standards are applied nationally to these specialists.

In light of the growing standardization in medical education, training, and communication, it is a misuse of the rules of evidence to arbitrarily restrict expert witnesses to those who practice in the same community. Dean Prosser notes the following in regard to the locality rule:

> The older decisions sometimes stated this as a standard of the "same locality;" but this is now quite generally recognized as too narrow. Later cases expanded it to speak of "the same or similar localities," thus including other towns of the same general type. The present tendency is to abandon any such formula, and treat the size and character of the community, in instructing the jury, as merely one factor to be taken into account in applying the general professional standard.

W. Prosser, Law of Torts 166 (3d ed. 1964), quoted in *Douglas v. Bussabarger,* 73 Wash. 2d 476, 490, 438 P. 2d 829, 838 (1968).

In *Kortus v. Jensen,* we said evidence that the expert had never practiced in the defendant's community goes to the weight to be accorded the evidence by the trier of fact; it does not keep the plaintiff's expert from testifying to a general standard of skill in the defendant's community if he testifies that he is familiar with that standard. See, also, *Raitt v. Johns Hopkins Hospital,* 274 Md. 489, 336 A.2d 90 (1975); *Douglas v. Bussabarger, supra.*

The crux of the matter is that the standards to which Dr. Brittain proposed to testify are minimum

standards applicable wherever the diagnosis and treatment of cancer of the breast occur. It is error to exclude an expert's testimony solely because he did not actually practice or reside in a community.

The verdict is set aside and the cause remanded for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

BOSLAUGH, J., dissenting.

I am unable to agree with the majority opinion in this case for several reasons.

The plaintiff's second amended petition alleged the defendants' standard of care toward the plaintiff's decedent fell below the "standards of accepted medical practice in the community of Alma, Nebraska," because the defendants failed to make a timely and reasonable medical examination of the decedent; failed to diagnose carcinoma of the breast; failed to undertake timely medical treatment for carcinoma; and failed to take a biopsy of the mass in decedent's right breast and the enlarged lymph node in decedent's right axilla.

The record shows Dr. Jenny examined the decedent on June 30, 1972, July 10, 1973, and April 25, 1974. At the July 10, 1973, examination Dr. Jenny found small, "BB" size, cysts in both breasts. On April 25, 1974, Dr. Jenny found a large, smooth, freely movable, irregular mass in the right breast. Dr. Jenny believed the decedent had fibrocystic disease, a diagnosis that was later confirmed by physicians who treated the decedent in Denver, Colorado. However, as a precautionary measure, Dr. Jenny referred the decedent to Dr. Stevenson, a surgeon from Kearney, Nebraska.

Dr. Stevenson examined the decedent at Alma on April 30, 1974. Dr. Jenny was not present during the examination, but his partner, Dr. Long, was present. Dr. Stevenson found no dominant nodule but detected

fine multinodularity in both breasts. Dr. Stevenson instructed the decedent to see Dr. Jenny after her next menstrual period.

Dr. Jenny again examined the decedent on June 19, 1974. The breasts were normal at that time except for the presence of multiple cysts. There was no mass, nodule, or lump at that time, and no enlarged node in either axilla.

On October 29, 1974, the decedent consulted Dr. Jenny in regard to a lump in her right axilla, or armpit, that she had first noticed 3 weeks earlier. Dr. Jenny examined the decedent's breasts which appeared to be normal, there being nothing dominant in either breast. Nevertheless, Dr. Jenny referred the decedent to Dr. Stevenson who examined the decedent that same day.

Dr. Stevenson found nothing dominant in either breast, but instructed the decedent to return in 2 to 3 weeks for a further examination. If the node were still enlarged at that time, Dr. Stevenson would arrange for a biopsy to be done at Kearney, Nebraska. The decedent did not return as requested and was not seen again by Dr. Jenny or Dr. Stevenson.

This case turns on the question of whether the defendants or either of them were negligent in failing to diagnose cancer in the decedent. There could be no negligence in failing to treat a disease which was never diagnosed.

At the time Dr. Jenny detected a mass in the decedent's breast, and the enlarged node in the axilla, he referred her to Dr. Stevenson. The plaintiff's claim of negligence in this regard is that Dr. Jenny failed to discuss his findings with Dr. Stevenson prior to Dr. Stevenson's examination of the decedent. There is no evidence that this, in any way, prejudiced the examination of the decedent by Dr. Stevenson. The evidence is clear that Dr. Stevenson knew what the decedent's complaints were and there is no evidence that Dr. Jenny's alleged negligence in failing to dis-

cuss his findings with Dr. Stevenson was of any consequence whatever. There is a complete absence of evidence of causation in this regard. The motion to dismiss as to the defendant Jenny should have been sustained.

The witness Dr. Brittain, called by the plaintiff, attempted to testify as to the standard of care in Alma, Nebraska. It was demonstrated, however, that Dr. Brittain had no knowledge or information concerning the facilities available at Alma for use in making a diagnosis of the decedent's condition. While the treatment for a disease may be more or less standardized, it is self-evident that the diagnostic procedures to be followed in a particular community will vary depending upon the facilities available. It is difficult to see how Dr. Brittain could testify as to the standard of care in communities similar to Alma if he was unfamiliar with the facilities at Alma.

A trial court has some discretion in determining whether an expert witness has an adequate basis upon which to express an opinion. In view of Dr. Brittain's unfamiliarity with the facilities available in Alma, Nebraska, it was within the discretion of the trial court to exclude his testimony as to the proper standard of care in that community in regard to diagnostic procedures.

The evidence in this case shows that at the times Dr. Stevenson examined the decedent she had no dominant mass in either breast. In other words, there was nothing in the breast to biopsy on either occasion. With respect to the node in the axilla, Dr. Stevenson did not believe an immediate biopsy was required because there was no dominant mass in either breast. The decedent, however, failed to return in 2 to 3 weeks as instructed, and in fact delayed a biopsy until January 28, 1975, approximately 90 days after her last examination by Dr. Stevenson, although she was aware of a lump in her right breast early in December 1974.

The judgment of the District Court should be affirmed.

CLINTON, J., dissenting.

I respectfully dissent from the majority opinion for the reason that there was no error in the court's refusal to receive the offer of the opinion of Dr. Robert Brittain. I agree with the dissent of Boslaugh, J., insofar as it pertains to the defendant, David E. Jenny, M.D. There was no evidence presented or offered which made a case submissible to the jury as to the defendant Dr. Jenny. The jury verdict in favor of both defendants should, therefore, be permitted to stand. In addition, the majority opinion, inadvertently perhaps, casts a shadow upon the validity of Neb. Rev. Stat. § 44-2810 (Reissue 1978), defining malpractice and professional negligence, which section, although not governing this case because it does not apply to causes of action accruing before the effective date of the statute, will apply in other malpractice cases. The three matters mentioned above will be discussed seriatim.

Even if it be accepted that Dr. Brittain was qualified to testify by being familiar with the standard of care required in Alma, Harlan County, Nebraska, and that the local standard is in this instance the same as the national standard, the offer of Dr. Brittain's testimony in question and answer form was properly refused because the questions and the proffered answers and opinion contained assumptions which were not supported by the evidence.

In *Clearwater Corp. v. City of Lincoln,* 202 Neb. 796, 277 N.W.2d 236 (1979), we said:

The opinion of an expert witness lacked probative value if the assumptions for it were shown to be not true. [Citation omitted.]

The value of the opinion of an expert witness was dependent on, and was no stronger than, the facts on which it was predicated. Such an opinion had no probative force un-

less the assumptions upon which it was based were shown to be true.

*Id.* at 802, 277 N.W.2d at 240. In that same case, we also said:

Expert testimony should not be received, or if received should be stricken, if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished ·from a mere guess or conjecture.

Where the opinion testimony of an expert witness does not have a sound and reasonable basis it should be stricken.

*Id.*, syllabus of the court.

We point out in this dissent just three of the assumptions not supported by the evidence in this record. The offer assumes that at the time of the examination by Dr. Stevenson on April 30, 1974, there was a "dominant" mass in the upper, outer quadrant of the patient's right breast and that it would have been found had the two doctors been in communication at that time. Dr. Stevenson's testimony was positive that the "large, smooth, freely movable, irregular mass in the upper outer quadrant of the right breast" was no longer there on that examination. It did not exist. There was, therefore, nothing to biopsy. When the patient returned to see Dr. Jenny on June 19, 1974, the mass, which he had detected on April 25, 1974, and which caused him to refer the patient to Dr. Stevenson, no longer existed. There was on these dates, then, nothing to biopsy. The evidence of the plaintiff's own expert, a general practitioner, is that a "smooth irregular mass would not make one think of a primary diagnosis of carcinoma . . . ."

The offer, including the questions, assumes that Dr. Jenny and Dr. Stevenson "medically abandoned" the patient for a period of 130 days. A careful examination of the record shows that the 130-day period

referred to is June 19, 1974, to October 29, 1974. On the latter day the patient returned to see Dr. Jenny. She had detected an enlarged node in her right armpit about 3 weeks earlier. At that time Dr. Jenny again examined the breasts. They were normal. He found the node in the right armpit and on the same day referred her to Dr. Stevenson who examined her the same day. There is no evidence that either of the defendants "medically abandoned" the patient. Under the pleaded allegations, negligent abandonment was not an issue. In any event, the quoted words were a statement of a conclusion not designed to elicit an opinion or fact and was, in the context used, pejorative and had no proper place in the question.

In several instances the offer does not separate the possible liability and claims of negligence as to the two defendants. For example, the offer used such phrases in several places as "did either defendant Dr. Jenny or Stevenson meet the standard of recognized medical care in Harlan County . . . ." It is, of course, elementary that a defendant is liable only for his own negligence and not that of another, absent an agency or some other relationship which makes one vicariously liable. There is no such evidence here.

It seems to be the universal rule that a physician who, being unable to take care of a patient, sends a substitute or who refers a patient to a specialist because the patient's ailment is or may be outside his field of competence, is not liable for the negligence of the physician to whom referral is made. A lengthy annotation on this and related principles appears at 85 A.L.R.2d 889 (1962). See, §§ 6-10 of that annotation and cases discussed both in the main volume and the 1979 supplement, especially *McCay v. Mitchell,* 62 Tenn. App. 424, 463 S.W.2d 710 (1970); *Nelson v. Sandell,* 202 Iowa 109, 209 N.W. 440 (1926); *Mayer v. Hipke,* 183 Wis. 382, 197 N.W. 333 (1924).

The plaintiff's own expert witness testified that Dr. Jenny satisfied his obligation of care when he referred the patient promptly to Dr. Stevenson. This, the undisputed evidence shows, he did on April 25, 1974, when he first noticed the irregular, freely movable mass, and again on October 29, 1974, when the enlarged node in the armpit was found. The plaintiff's expert, Dr. Williams, described the relationship as a referral and not as a consultation, and testified that when a physician makes a prompt referral to a specialist, he has then satisfied his obligation of care. There is no claim made in this case that the referral was made to an incompetent specialist.

Many of the proffered questions were vague and confusing. Objections were made to the offers which were inclusive of the deficiencies we have discussed as well as others. Without regard to the question of whether the standard is local or national, or the competency of Dr. Brittain to express an opinion because of his familiarity with the standard, the offer was properly rejected for other good reasons.

As we have already noted in connection with our discussion of the admissibility of the offer of Dr. Brittain's testimony in its failure to separate the liability of the two defendants, the plaintiff's own evidence shows that Dr. Jenny, a general practitioner, satisfied his obligations when he, on two occasions, referred the patient to a specialist. It is pure conjecture to argue that, if Dr. Jenny had communicated with Dr. Stevenson, something additional would have been found which would have led to an earlier diagnosis.

This leads us to the discussion of § 44-2810, which became effective July 10, 1976. The majority opinion says:

> If practices within a certain specialty do not
> vary significantly throughout the country,

there is no policy justification for the locality rule.

"We recognize that medical standards of care and skill are becoming national, rather than local or regional." [*Kortus v. Jensen,* 195 Neb. 261, 269, 237 N.W.2d 845, 850 (1976).]

*Kortus v. Jensen,* 195 Neb. 261, 237 N.W.2d 845 (1976), was released January 22, 1976. I would accept the statement that, in the specialties, especially, it is probably true that in the diagnosis and treatment of certain diseases, national and local standards of care may be the same. However, that is necessarily a question of fact to be determined in each particular case based upon the testimony.

Section 44-2810 provides:

Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.

I do not believe that the statement in the opinion about the lack of "policy justification for the locality rule" should be construed as limiting the applicability of § 44-2810 when there is, in fact, a difference in standards between localities. This, it seems to me, would also relate to the availability of technological equipment. Every specialist and hospital can-

not, e.g., have a body-scanner.

The statement in the majority opinion quoted above seems to saddle Dr. Jenny with the standard of care of a specialist, which he is not.

Dr. Jenny was entitled to have a verdict directed in his favor. There being no error in refusing the proffered opinion of Dr. Brittain, the jury verdict for both defendants should be affirmed.

BOSLAUGH, J., concurs in this dissent.