ALLEN D. FALES, NATURAL FATHER AND LEGAL GUARDIAN AND NEXT FRIEND OF COLTON W. FALES, APPELLANT, V. N. LEON BOOKS, M.D., APPELLEE.

558 N.W.2d 831

Filed January 28, 1997.   No. A-95-934.

Kent A. Schroeder and Vikki S. Stamm, of Ross, Schroeder, Brauer & Romatzke, for appellant.

Daniel L. Lindstrom and Jeffrey H. Jacobsen, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

SIEVERS, MUES, and INBODY, Judges.

INBODY, Judge.

Allen D. Fales appeals the judgment of the district court for Custer County following a jury trial. This case involves a malpractice claim made by Fales on behalf of his infant son, Colton

W. Fales, alleging that N. Leon Books, M.D. (Dr. Books), was negligent in his use of forceps to assist during the delivery of Colton. Following a trial, the jury returned a verdict in favor of Dr. Books, and Fales appealed. For the reasons cited below, we reverse.

## STATEMENT OF FACTS

On April 26, 1992, at approximately 2:40 a.m., Dr. Books was informed that his patient, Vedah Fales, had gone into labor. Dr. Books, a family practitioner in Broken Bow, Nebraska, had provided prenatal care for Vedah and was the attending physician during the birth of Vedah's son, Colton. Colton was born on April 27 at approximately 9:29 p.m.

Vedah experienced a long and difficult delivery. During her labor, Dr. Books administered Pitocin to increase the force of Vedah's contractions and eventually also administered an epidural anesthetic. When Vedah appeared no longer able to adequately push to deliver Colton, Dr. Books applied forceps to the head of Colton. Dr. Books applied the forceps three times in an attempt to assist the delivery of Colton. Approximately 30 minutes after the final forceps' application, Vedah delivered Colton without assistance. Upon delivery, Colton required resuscitation. As a result of the use of the forceps, Colton suffered a skull fracture.

On November 12, 1993, Fales, Colton's father, filed a petition in the district court for Custer County on behalf of Colton, alleging that Dr. Books' negligence was the direct and proximate cause of injuries suffered by Colton during his delivery. Fales alleged, among other things, that Dr. Books was negligent in his use of the forceps and in his failure to perform a cesarean section.

A trial on the matter commenced on May 22, 1995, before a jury. At trial, Dr. John Schulte, an obstetrician/gynecologist from Kearney, Nebraska, testified as an expert for Fales. Dr. Books testified on his own behalf, and Dr. Stuart Embury, a family practitioner from Holdrege, Nebraska, also testified for Dr. Books. Prior to Dr. Embury's testifying, Fales made a motion in limine regarding the testimony of Dr. Embury and another expert, Dr. Gilbert Rude, who it appears was not called

to testify. With respect to Dr. Embury, Fales requested that the court not permit Dr. Embury to testify regarding the use of forceps and, further, that the court limit Dr. Embury's opinion testimony to whether or not a cesarean section was an appropriate alternative in this case. In support of the motion, Fales argued that Dr. Books failed to disclose in interrogatories that Dr. Embury would testify regarding his opinion of Dr. Books' use of forceps. The court overruled Fales' motion.

During the testimony, Dr. Embury testified that he had an opinion concerning whether Dr. Books met the appropriate standard of care for a family practitioner in his care and treatment of Vedah and Colton, including the delivery of Colton. When asked to state that opinion, Fales' attorney objected on the basis of foundation and because "the opinions that [Dr. Embury] is going give to [sic] go beyond those disclosed by virtue of discovery and I would ask the Court to ask the Reporter to note my former objection that was made outside the presence of the Jury for the purpose of the record." The court overruled the objection, and Dr. Embury testified that in his opinion, Dr. Books met and exceeded the standard of care in this case. Fales' attorney did not request a continuing objection, nor did he object to other more specific questions asked of Dr. Embury regarding Dr. Books' use of forceps.

At the conclusion of the testimony, the court held a jury instructions conference with the parties. At that time, Fales' attorney proffered a proposed instruction regarding the applicable standard of care. The court, however, refused to give this proposed instruction because it did not include the language "a similar practice in a same or similar locality," and the court, instead, gave a similar instruction which included the locality language.

Following the jury deliberations, on May 25, 1995, the jury returned a verdict in favor of Dr. Books. Fales filed a motion for new trial and a motion for a judgment notwithstanding the verdict on June 2, and an amended motion for a new trial on August 17. The amended motion for new trial alleged, among other things, that the jury arrived at the verdict as a result of jury misconduct, that the court erred in failing to further instruct the jury when requested to do so, and that the court erred in telling the

jury that it would not accept anything less than a 10-to-2 decision and the jury had to deliberate until such a verdict was reached. A hearing on the motion for new trial was held on August 17. At the hearing on the motion, Fales offered into evidence affidavits from two jurors, Shirley Hoskins and Joan Case. Dr. Books objected to the admission of the affidavits, and the court sustained the objection. On August 17, the court overruled the motion for a new trial and the motion for a judgment notwithstanding the verdict. The court also ordered that costs for the discovery deposition taken by Dr. Books of Dr. Schulte be taxed to Fales. Fales appeals from the judgment and the subsequent orders.

## ASSIGNMENTS OF ERROR

On appeal, Fales argues that the court erred by (1) allowing Dr. Embury's testimony regarding forceps, (2) failing to give Fales' proposed instruction regarding standard of care of a health care provider, (3) giving instruction No. 7 regarding the standard of care, (4) failing to fully and accurately answer questions from the jury, (5) overruling Fales' motion for new trial, (6) overruling Fales' motion for a judgment notwithstanding the verdict, (7) failing to receive into evidence certain exhibits during the hearing on the motion for new trial, and (8) taxing the costs of Dr. Schulte's deposition to Fales.

## ANALYSIS

■ Fales first argues that the trial court erred by allowing Dr. Embury to testify, over objection, to his opinion regarding Dr. Books' use of forceps. A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996).

Fales asserts that the trial court abused its discretion in allowing Dr. Embury's testimony, over objection, because Dr. Books failed to adequately answer an interrogatory regarding the substance of Dr. Embury's expert testimony. Books' response to the interrogatory regarding the substance of Dr. Embury's expert testimony was as follows:

Dr. Embury will testify that in his opinion, after a review of the medical records, it is his opinion that Dr. Books met the standard of care in his medical treatment of Vedah Fales and Colton W. Fales. His prenatal care was appropriate, as was his perinatal care. Mrs. Fales was appropriately monitored and appropriately managed during her labor. It was indeed a hard delivery, but the patient was showing progress and it is Dr. Embury's opinion that he did not feel a cesarean section was indicated as long as the patient was progressing, even slowly. Dr. Books did a pelvimetry and it appeared that the patient would deliver vaginally.

Prior to the testimony, Fales sought a motion in limine to restrict Dr. Embury's testimony to whether a cesarean section was an appropriate alternative. The court overruled this motion and instructed Fales' attorney that "you will need to make your objections for the basis of the record." The record indicates, however, that Fales' attorney objected to only one question posed to Dr. Embury. The question which was objected to asked Dr. Embury what his opinion was concerning whether Dr. Books met the appropriate standard of care for a family practitioner in his care and treatment of Vedah and Colton, including the delivery of Colton. Fales' attorney objected to this question on the basis of foundation and because "the opinions that [Dr. Embury] is going give to [sic] go beyond those disclosed by virtue of discovery and I would ask the Court to ask the Reporter to note my former objection that was made outside the presence of the Jury for the purpose of the record." The court overruled the objection, and Dr. Embury testified that in his opinion, Dr. Books met and exceeded the standard of care in this case. Fales' attorney failed to request a continuing objection and then failed to object to later, more specific questions regarding Dr. Books' use of forceps, such as, "Do you feel that the use of forceps in this particular deliver[y] was appropriate?"

A motion in limine is not enough to preserve a problem for appeal. As the district court noted, it was necessary for Fales to also make a timely objection. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). If,

when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction, or fails to object or to insist upon ruling on the objection to introduction of such evidence, and otherwise fails to raise the question as to its admissibility, the party is considered to have waived whatever objection he or she may have had thereto, and the evidence is in the record for consideration the same as other evidence. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995). Because Fales' attorney failed to request a continuing objection or to object to specific questions regarding Dr. Books' use of forceps, we find no abuse of discretion in admitting the testimony into evidence.

Fales next argues that the court erred by refusing to give his proposed jury instruction regarding the standard of care of a health care provider and by, instead, giving jury instruction No. 7. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Id.* To establish reversible error from a court's failure to give a requested jury instruction, the appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996).

Fales' proposed instruction stated: "A physician such as the defendant has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in the delivery of infants." The court refused to give this instruction "because it [did] not include the language required by the Statute, include [sic] a similar practice in a same or similar locality, at the end of the Instruction." Instead, the court gave instruction No. 7, which

read as follows: "DUTY OF HEALTH CARE PROVIDER[.] A physician has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in a similar practice in the same or similar localities." Fales argues that the court erred by giving instruction No. 7 in place of his proposed instruction, because the locality standard which was included in instruction No. 7 was not applicable in this case.

Neb. Rev. Stat. § 44-2810 (Reissue 1993), a portion of the Nebraska Hospital-Medical Liability Act (the Act) upon which the court apparently relied, provides in part:

Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice *in his or in similar localities.*

(Emphasis supplied.)

Despite the language in § 44-2810, Dr. Books conceded in his answer that he did not qualify as a health care provider under the Act. Neb. Rev. Stat. § 44-2821 (Reissue 1988) states that if a health care provider fails to qualify under the Act, he or she will be subject to liability under the common law.

Fales argues that the common law does not require that a physician be judged only by the standard of physicians in his or her locality or in similar localities. In so arguing, Fales cites to *Burns v. Metz*, 245 Neb. 428, 433, 513 N.W.2d 505, 508 (1994), which states:

"[P]roof of medical negligence (malpractice) requires two basic evidentiary steps, followed by proof relating to proximate cause and damages: (1) Evidence of the generally accepted and recognized standard of care or skill of the medical community in the particular kind of care; and (2) a showing that the physician or surgeon in question negligently departed from that standard in his treatment of the plaintiff. . . ."

(Quoting *Kortus v. Jensen*, 195 Neb. 261, 237 N.W.2d 845 (1976).) However, in *Kortus v. Jensen*, the court, although recognizing that "medical standards of care and skill are becoming

national, rather than local or regional," *id.* at 269, 237 N.W.2d at 850, stated:

> In performing professional services a doctor who is a specialist must use the skill and knowledge ordinarily possessed and used under like circumstances by members of his specialty in good standing in his or similar localities. . . .
>
> In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a doctor in a particular community, the test is that which physicians or surgeons in the same neighborhood and in similar communities engaged in the same or similar lines of work would ordinarily exercise for the benefit of their patients.

*Id.* at 268, 237 N.W.2d at 850.

Nevertheless, Fales cites to the more recent case of *Wentling v. Jenny*, 206 Neb. 335, 293 N.W.2d 76 (1980), a medical malpractice case which occurred before the passage of the Act and which involved a doctor's alleged failure to timely diagnose cancer. In *Wentling v. Jenny*, the court held that it was error to exclude an expert's testimony solely because he or she did not actually practice or reside in the same community. In so deciding, the court stated that "[c]ancer is a commonly prevailing disease with common characteristics. If practices within a certain specialty do not vary significantly throughout the country, there is no policy justification for the locality rule." *Id.* at 338, 293 N.W.2d at 78-79.

Dr. Books argues that the locality rule is still applicable as it is included in the Nebraska Jury Instructions. Specifically, NJI2d Civ. 12.01 states that "A [physician] has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other [physicians] engaged in a similar practice *in the same or similar localities*." (Emphasis supplied.) However, the comment at 689 to NJI2d Civ. 12.01 notes that "[a]s communication among doctors improves, as continuing medical education improves and medical education becomes more standardized, as areas of medicine become fewer in which practices vary significantly from locality to locality, more and more of the locality rule may give way

to the national rule." Furthermore, the comment at 690 states that

> where there is no testimony about a particular local standard, where all of the evidence supports the conclusion that the local standard is the same as the national standard, where it is undisputed that practices do not vary throughout the country—in other words, where this is not an issue of fact—it is appropriate to drop the following words from the instruction:
>
> "in the same or similar localities."

In this case, there was no evidence that a particular local standard of care existed with regard to either the delivery of infants or the use of forceps. In fact, Dr. Books himself testified that there was no difference between the local standard of care for the delivery of fetuses and the national standard of care. In short, no issue of fact existed as to whether the local standard differed from the national standard. Both parties agree that the two standards of care are the same.

In instruction No. 7, the court included language which instructed the jury to judge Dr. Books' actions against the standards of other physicians "in the same or similar localities." By including this language, the court in effect asked the jury to determine a factual issue which did not exist: that is, what the local standard was. A trial court must eliminate all matters not in dispute and submit to the jury only the controverted questions of fact upon which the verdict must depend. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous. *Id.* It is more than mere probability that an instruction on a matter not an issue in the litigation distracts a jury in its effort to answer legitimate, factual questions raised during trial. *Id.* See, also, *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

The instruction in this instance asked the jury to determine whether Dr. Books acted in accordance with a standard which the evidence indicated did not exist. There is prejudice because, under the instruction given, the jury could have reasonably been encouraged to discount the testimony of Fales' expert, Dr.

Schulte from Kearney, since he was not practicing in the same or similar locality as Dr. Books. And, conversely, to place greater credence in the testimony of Dr. Embury whose locality of practice, Holdrege, was more similar to that of Dr. Books. Because of the absence of evidence of a local standard, the jury should have been allowed to consider Dr. Books' action in light of the opinions of both Drs. Schulte and Embury without an instruction which implicitly instructed the jury to favor or discount an opinion because of the geographical locality of the medical practice of the expert expressing it. Thus, the erroneous instruction was misleading and prejudicial.

Fales assigns five additional assignments of error. Because our decision regarding the jury instructions is dispositive, we will not address the remaining assigned errors. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

## CONCLUSION

Although Dr. Books failed to specifically enumerate the substance of Dr. Embury's testimony in his answer to an interrogatory, Fales failed to properly object to the testimony, and it was therefore not an abuse of discretion to admit Dr. Embury's testimony. However, because the jury instruction on the standard of care included the "locality rule" where no evidence was adduced or argument made that the standard of care was unique to the locality, the court erred in admitting such an instruction. We therefore reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.