BRUCE L. BUMP AND BRENDA K. BUMP, HUSBAND AND WIFE, APPELLANTS, V. FIREMENS INSURANCE CO. OF NEWARK, NEW JERSEY, APPELLEE.

380 N.W.2d 268

Filed January 24, 1986.   No. 84-828.

William L. Howland of Bump, Howland & Watson, for appellants.

Philip M. Kelly of Winner, Nichols, Douglas and Kelly, for appellee.

KRIVOSHA, C.J., HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired, and OTTE, D.J.

SHANAHAN, J.

Firemens Insurance Co. of Newark, New Jersey (Firemens) issued a homeowner's insurance policy to Brenda and Bruce Bump, insuring their residence against damage by wind. Firemens' policy excluded loss caused by "pressure or weight of water or ice, whether driven by wind or not," as well as loss caused by "latent defect." While Brenda and Bruce were absent from their home in Chadron on August 3, 1981, a severe thunderstorm with a 4-inch rain and winds of 55 knots struck the city. Upon return to their home Bruce discovered that one of the basement walls had buckled, permitting mud and water to enter the basement. On August 4 Bruce contacted Firemens' local agent, who instructed Bruce to obtain an engineer's report on the loss and an estimate of the damage to Bumps' house. Sometime toward the end of August, after Bruce had obtained and forwarded his engineer's report to Firemens' agent, an adjuster for Firemens, David Johnson, came to Bumps' house, inspected the premises, and in the course of his inspection, according to a later offer of proof, stated to Brenda that "[Bumps] were insured, and the loss was covered, and [Bumps could] proceed with the repair work." Relying on the adjuster's statement about insurance coverage for the loss, Bumps

contacted a contractor who, beginning in September, repaired the damage to the house, including replacement of the damaged basement walls.

In a November 4 letter to Bruce, Firemens' adjuster stated that the insurance company was obtaining a "second opinion" from a structural engineer concerning Bumps' "wind damage claim." The adjuster hired a structural engineer, Warren Bishop, who viewed Bumps' home on November 28, after Bumps had substantially completed repairs to their home. Bishop reviewed weather service records and then reached his conclusion that the damage to Bumps' house had resulted from "excessive external pressure" exerted on the outside wall when the high wind, as a "catalyst," drove water against the wall. In his January 4, 1982, letter to Bumps, the adjuster stated:

> After reviewing all aspects of this matter it is the company's position that there would be no coverage afforded for your loss. The primary causative factor of the basement walls buckling was the weight or pressure of water against the wall and that is specifically excluded from your policy. While there is a theory that pressure of the wind against the walls lessened the downward pressure of the upper walls against the foundation, the main cause of your loss was pressure of water against the foundation wall from underground sources and this is specifically excluded.

After Firemens refused to pay Bumps' claim, on June 24, 1983, Bumps filed suit and alleged two causes of action against Firemens. In their first cause of action, Bumps alleged that the "windstorm" on August 3, 1981, was the cause of damage to their home and sought a judgment for $6,065 against Firemens. In their second cause of action, Bumps alleged that they had "relied upon the representations of [Firemens'] agents, and as a result thereof, [Bumps] contracted for the repair of the damages and incurred expenses in repairing said damage" to Bumps' house, thereby suffering "loss and damage in the amount of One Thousand Dollars ($1,000.00)," for which Bumps sought an additional judgment against Firemens. On July 18 Firemens filed its original answer in which Firemens generally denied liability on its policy of insurance, alleged that

damage to Bumps' house was "caused by an occurrence outside the provisions" of Firemens' policy, and specifically denied "any representations of any agents [of Firemens] gave rise to an estoppel, or any basis for reliance" by Bumps. The court permitted Firemens to file an amended answer, and on September 8 Firemens filed its amended answer alleging that Firemens "Demurrers to it [Bumps' petition]" and that its "policy itself prohibits suit after the expiration of one year from the occurrence [sic] giving rise to the claim and the instant suit is untimely." (Under "SECTION I—CONDITIONS," paragraph 8 of Firemens' policy requires that suit against the company must be "started within one year after the occurrence causing loss or damage.") Firemens' amended answer also contained renewed allegations that Bumps' damage resulted from an "occurrence outside" the provisions of its policy and that estoppel was inapplicable in the litigation. In its order of September 19 the trial court recited: "The court took up the demurrer found in defendant's answer . . . . ORDERED defendant's demurrer is overruled."

The parties filed no further pleadings before a pretrial conference on May 30, 1984. At the pretrial conference the court specified the issues for trial as follows:

> 1. Did a wind storm cause damage to a foundation wall?
>
> 2. If so, what is the amount of damage to the foundation wall?
>
> 3. Did rain water enter through the damaged wall?
>
> 4. Was personal property damaged by the rain water?
>
> 5. What was the amount of damage done to the personal property?

In addition to the five issues designated, the court's report on the pretrial conference provided:

> AMENDMENT OF PLEADINGS: [Bumps] will have the opportunity to amend their petition as to cause of action number two. The amendment is to be done by June 11, 1984. The Court advised counsel that if a demurrer is filed concerning cause of action number two of the amended petition, argument could be had by telephonic conference.

. . . .

ADDITIONAL DISCOVERY: There will be no additional discovery after July 15, 1984.

. . . .

EXCEPTIONS: Either party may except to this report in writing within ten days of receipt of a copy. Unless excepted to, this report shall control the subsequent course of the action unless modified at the trial to prevent manifest injustice.

Bumps neither amended their petition nor objected to the report concerning the pretrial conference.

At commencement of trial on September 5, Firemens' counsel, by a motion in limine, sought to prevent Bumps' presenting evidence concerning the adjuster's statement made while inspecting damage at Bumps' home. Firemens based its motion on the pretrial conference report, that is, estoppel was not among the five issues designated for disposition at trial, and Bumps had not amended their petition. In response to Firemens' motion Bumps' attorney argued that Bumps were

entitled to show all of the evidence pertaining to the inspection and investigation of the claim by the insurance company. . . . [I]t would be unfair if the company were able to limit or prohibit [Bumps'] presenting all of the facts relative to that investigation and that inspection of the loss as it was turned in by [Bumps]. . . . I think that is part and parcel of even the wind claim.

Noting that Bumps had neither amended their petition nor objected to the report of the pretrial conference, the court sustained Firemens' motion in limine, prohibited Bumps from adducing evidence about the adjuster's statement made during investigation of the loss, and later, in reference to the adjuster's statement, remarked to counsel, "Don't try to get it in."

Bumps called an expert witness who expressed his opinion that a "high wind" caused the basement wall to fail. In the course of direct examination of Brenda Bump, interrogation elicited existence of the conversation between Brenda and the adjuster, but, on objection by Firemens, the content of that conversation was not disclosed. Bumps offered to prove that the adjuster had in fact told Brenda Bump that Bumps "were

insured, and the loss was covered."

During presentation of Bumps' case on the second day of trial, and without having called Firemens' structural engineer to the witness stand, Bumps' attorney orally requested an order requiring Firemens to produce the written report from its expert witness and documents relative to the expert's report. Commenting that "you had up to July 15, 1984 to make whatever discovery you wanted to," the court denied Bumps' motion for production of documents but allowed Bumps to call Firemens' expert to testify as a part of their case. Bumps declined to call Firemens' expert as a witness and rested their case. The expert testified during Firemens' case and expressed his opinion that failure of the basement wall was caused by external pressure from "soil and/or water" against the wall. Bumps did not cross-examine Firemens' expert about his findings or opinion concerning the loss which occurred on August 3, 1981.

Without request from Firemens the court instructed the jury that a loss from a "latent defect" was excluded from coverage under Firemens' policy of insurance issued to Bumps. The jury returned a verdict for Firemens.

Bumps contend that the trial court committed the following errors: (1) Allowing Firemens to amend its answer; (2) Eliminating Bumps' second cause of action as a result of the pretrial conference; (3) Sustaining Firemens' motion in limine and prohibiting adduction of evidence concerning the adjuster's statement that the loss to Bumps' house was "covered" by Firemens' policy; (4) Refusing to order production of the expert witness' report submitted to Firemens; and (5) Giving the instruction that loss due to a "latent defect" was excluded from coverage under Firemens' policy of insurance.

Bumps' first assignment of error regarding Firemens' amended answer is without merit. Firemens filed its answer on July 18 and approximately 7 weeks later, on September 8, filed its amended answer raising a potential question whether Bumps had filed their lawsuit within the time prescribed by Firemens' policy. Although they express their dissatisfaction with the trial court's permitting Firemens to amend its answer, Bumps do not

show in what manner the trial court abused its discretion in permitting the amended answer. In the absence of an abuse of discretion, a trial court's decision permitting an amendment to a pleading will be affirmed. See *First Nat. Bank v. Schroeder*, 218 Neb. 397, 355 N.W.2d 780 (1984).

In their second assignment of error, Bumps assail the trial court's eliminating the second cause of action alleged in their petition. The record fails to disclose the precise procedural scalpel used to excise the second cause of action from Bumps' petition. Assuming that the allegations of the second cause of action did state facts sufficient to constitute a cause of action, the trial court, nevertheless, removed from trial any issue raised by the second cause of action. Pretrial conferences are conducted to simplify and narrow issues presented in a case. *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985). Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. See *Olson v. England*, 206 Neb. 256, 292 N.W.2d 48 (1980). Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. See *Marotta v. Iroquois Realty Co.*, 412 N.E.2d 797 (Ind. App. 1980). In *Hasenauer v. Durbin*, 216 Neb. 714, 719, 346 N.W.2d 695, 698 (1984), we stated:

> The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken.

Although the trial court so narrowed the issues to the extent that Bumps' second cause of action was eliminated from the lawsuit, Bumps were given the opportunity to amend their petition but elected not to amend their pleading. Moreover, informed of their right to object to any aspect of the report entered on the pretrial conference, Bumps made no objection. Without Bumps' objection or exception to the report of pretrial conference, there is nothing preserved for appellate review regarding the trial court's specification of issues to be resolved at trial. Any claimed error based on the issues specified by the trial court was waived by Bumps' failure to object to the report

on the pretrial conference and cannot be asserted for review by this court. See *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144 (Me. 1983).

Through elimination of the second cause of action, Bumps' reliance on the adjuster's statement made during his investigation of the loss was irrelevant, that is, existence of Bumps' reliance was of no consequence to determination of the action. See Neb. Evid. R. 401 (relevant evidence; defined) (Neb. Rev. Stat. § 27-401 (Reissue 1979)). However, as reflected in the report on the pretrial conference, the crucial question to be answered by the jury was: "Did a windstorm cause damage to a foundation wall?" Evidence having any tendency to make it more probable that wind was the cause of damage to the house was relevant to a determination of Bumps' first cause of action. See Neb. Evid. R. 401. Given Bumps' "wind damage claim," if the "loss was covered," it is the inescapable and only inference that the loss was caused by a peril or risk—a windstorm—for which there was coverage by Firemens' policy issued to Bumps. Therefore, in addressing Bumps' third assignment of error and contention that the adjuster's statement was admissible, we must examine Neb. Evid. R. 801(4): "A statement is not hearsay if: . . . (b) The statement is offered against a party and is . . . (iv) a statement by his agent or servant within the scope of his agency or employment . . . ." See Neb. Rev. Stat. § 27-801(4) (Reissue 1979).

Rule 801(4)(b)(iv) is patterned on Rule 801(d)(2)(D) of the Federal Rules of Evidence. The advisory committee's notes for federal Rule 801(d)(2)(D) contain the following observation:

> The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusive of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment.

See Fed. R. Civ. P. 801 at 307 (West 1985). In the traditional view regarding vicarious admission in a statement of an agent,

> there must be a showing of "speaking authority" tested by the usual standards of agency law before the statement of the agent can be admitted against his principal. Dissatisfaction with this narrow formula grew steadily because it frequently caused courts to exclude the agent's highly probative statement on the theory that the employer had not authorized the agent to make damaging remarks about him.

4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(D)[01] at 801-219 (1985). The rationale for the general proposition—a statement made by an agent or employee within the scope of such agency or employment is admissible—is expressed in McCormick on Evidence § 267 at 788-89 (E. Cleary 3d ed. 1984):

> The agent is well informed about acts in the course of the business, his statements offered against the employer are normally against the employer's interest, and while the employment continues, the employee is not likely to make the statements unless they are true. Moreover, if the admissibility of admissions is viewed as arising from the adversary system, responsibility for statements of one's employee is a consistent aspect. Accordingly, the predominant view now favors broader admissibility of admissions by agents if the statement concerned a matter within the scope of the declarant's employment and was made before that relationship was terminated.

The hallmarks of reliability and trustworthiness are more evident in a situation involving an insurance adjuster's vicarious admission than in the case of statements made by generic agents or employees. "An 'adjuster' or 'insurance adjuster' is a person, copartnership or corporation who undertakes to ascertain and report the actual loss to the subject-matter of insurance due to the hazard insured against." *Jensen v. Lincoln Hail Ins. Co.*, 125 Neb. 87, 94-95, 249 N.W. 94, 97 (1933). As a result of its policy, an insurance company has a contractual obligation to pay its insured's valid claim and, therefore, often dispatches one with special knowledge—the adjuster—to

separate fact from fiction regarding a claim and obtain information to enable the insurance company to distinguish the valid claim from a claim for which the insurance company is not liable under its policy. Otherwise, an insurance company's sending an inept or incompetent adjuster, or one who is otherwise incapable of ascertaining and reporting a loss, spawns skepticism about good faith dealing with an insured—a specter the insurance industry has long labored to dispel. In the present case there is nothing to indicate that Johnson, acknowledged as Firemens' adjuster, was other than one qualified to ascertain the loss and attendant circumstances on which Bumps' claim was based.

In *Continental Insurance Company v. Levinson*, 224 So. 2d 445 (Fla. App. 1969), the question was whether a boat loss had resulted from a risk covered by an insurance policy. Levinson called Continental's investigator as a witness, who acknowledged telling Levinson that there was coverage for the loss under Continental's policy. Levinson also testified about his conversation with Continental's investigator. The appellate court held the investigator was Continental's "employee," so that the investigator's statements to Levinson regarding coverage under the policy were made in the scope of that investigator's authority and were admissible as an admission against Continental. Regarding the investigator's statements about insurance coverage, the Florida court concluded that the jury was free to "consider them indicative and meaningful in the light of [the investigator's] experience in the field and his investigation of this particular loss." *Id.* at 446.

Acceptance of admissibility regarding an agent's admission has been recognized in situations analogous to *Continental Insurance Company v. Levinson, supra.* In *Kaiser Aluminum & Chemical v. Ill. Cent. Gulf R. Co.*, 615 F.2d 470 (8th Cir. 1980), a suit on account of a contaminated shipment of bauxite, a statement by the defendant railroad's claim agent that " '[i]t is highly likely that contamination originated with one or more railcars' " was admissible under federal Rule 801(d)(2)(D) and relevant as evidence on the issue of the condition of the ore delivered to the railroad for shipment. *Id.* at 476. *Rutherford v. State*, 605 P.2d 16 (Alaska 1979), involved bodily injury

sustained by the plaintiff when the plaintiff's automobile collided with an emergency vehicle driven by a state trooper responding to an emergency call. State troopers investigating the accident prepared departmental memoranda expressing that the trooper driver, by operating his vehicle at a "slower speed," could have avoided the accident. The Alaska Supreme Court, reviewing the Alaska rules of evidence identical with federal Rule 801(d)(2)(D), held the memoranda were admissible as the "statement of a party opponent made by an agent or employee concerning a matter within the scope of his agency or employment . . . ." *Id.* at 23.

Unquestionably, communication with an insured is a vital and integral part of services rendered by an insurance adjuster for validation or rejection of an insured's claim against the insuring company. Such communication constitutes a statement within the scope of an adjuster's agency or employment by the insurance company. We, therefore, hold that the adjuster's statement made to Brenda Bump concerning insurance coverage supplied by Firemens' policy was admissible under Rule 801(4)(b)(iv). Because the statement contained evidence bearing upon the issue of causation for the loss claimed by Bumps, the adjuster's statement was relevant. See Neb. Evid. R. 401. Exclusion of the adjuster's statement was not harmless error but affected Bumps' substantial right to present reliable evidence on the question of causation, the very heart of the lawsuit. See Neb. Evid. R. 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1979)). Under the circumstances failure to admit the adjuster's statement was an abuse of discretion constituting prejudicial error preventing Bumps from receiving a jury's fair consideration of their claim for damages.

Bumps' fourth assignment of error directed to the court's refusal to order production of documents during the course of trial is not sustained. Bumps' motion for production of documents was an end run to avoid the restrictive order found in the report on the pretrial conference, the specific time limit for completion of discovery. Bumps offer no justification for failure to complete discovery within the time constraint imposed by the court. Whatever rights a litigant may have concerning discovery, such rights are not unlimited. Subject to

mandatory provisions of the Nebraska Discovery Rules and appropriate statutes, discovery procedures, including a time limit for completion of discovery, are matters for judicial discretion exercisable to control orderly progression of cases toward trial. "[T]he principle that a judge is responsible for moving his docket is not a new one, and discretion was always lodged in trial judges to deny discovery when that process interfered with expeditious disposition of civil litigation." *Klabunde v. Stanley*, 384 Mich. 276, 282, 181 N.W.2d 918, 920-21 (1970). In addition to making a request not conforming with the requirements of Rule 34 of the Nebraska Discovery Rules, Bumps never asked the court "to prevent manifest injustice" and alter the pretrial order imposing a time limit for completion of discovery. See Supreme Court rule regarding pretrial procedure (Neb. Ct. R. at 10.1 (rev. 1983)). Bumps have not indicated in what manner they have suffered prejudice by the court's refusal to order Firemens to produce the written report rendered by its expert witness and do not suggest that their inability to obtain the expert's report resulted in an unfair disposition of their claim for damages. A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system. See *Younkin v. Younkin, ante* p. 134, 375 N.W.2d 894 (1985). See, also, *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984) (characteristics of an "abuse of discretion"). We find no abuse of discretion on the part of the trial court in refusing to order production of documents during trial.

In their fifth and final assignment of error, Bumps contend the court erred in giving the instruction that the "latent defect" was excluded from coverage under Firemens' policy of insurance. It is true that a "latent defect" was a risk excluded from coverage under Firemens' policy. However, Firemens' amended answer does not refer to any specific policy exclusion in terms of a "latent defect" but, rather, refers to some nondescript cause of damage which, at best, is simply an allegation tantamount to a denial that Bumps' loss or damage

was caused by a peril or risk covered by Firemens' policy. In an insured's action against an insurance company on its policy, as a general rule limitations of liability, and loss from an excepted cause, are matters of defense to be specifically pled by the insurer. *Farmers Union Coop. Ins. Co. v. Reinwald*, 194 Neb. 766, 235 N.W.2d 630 (1975). A latent structural defect in Bumps' house was not an issue framed by Firemens' amended answer, was not one of the issues specified in the court's report on the pretrial conference, was not raised by any evidence adduced at trial, and was absolutely irrelevant to any consideration by the jury under the circumstances. "Jury instructions should be confined to the issues presented by the pleadings and supported by the evidence. Ordinarily, it is error to submit to the jury an issue which is not pleaded in the case." *Simon v. Christie*, 210 Neb. 600, 601, 316 N.W.2d 303, 304 (1982). It is more than mere probability that an instruction on a matter not an issue in litigation distracts a jury in its effort to answer legitimate, factual questions raised during trial. Submitting a factual issue on which there is no evidence can only obfuscate a jury's deliberation. The instruction on latent defect was clearly prejudicial error. We need not elaborate further.

For the foregoing reasons we affirm the district court's judgment concerning Bumps' second cause of action stated in their petition, but in view of the prejudicial errors occurring at trial concerning Bumps' first cause of action, we reverse the judgment of the district court and remand this matter for a new trial.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.