ROBERT S. LONG, M.D., APPELLANT, V. ROBERT J. HACKER, M.D., APPELLEE.
520 N.W.2d 195

Filed August 5, 1994.   No. S-91-1207.

Steven J. Riekes and Kevin R. Hopp, of Richards, Riekes, Brown & Zabin, P.C., for appellant.

Patrick G. Vipond, David J. Schmitt, and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

Plaintiff-appellant, Robert S. Long, M.D., brought a medical malpractice action against defendant-appellee, Robert J. Hacker, M.D., a neurosurgeon, in the district court for Douglas County. Hacker had performed a laminectomy on Long, and it is uncontested that Hacker operated on the wrong vertebrae of Long's spine. This miscalculation was apparently due to the misinterpretation of an x ray. The jury found in favor of Hacker. The Nebraska Court of Appeals affirmed the judgment of the district court. *Long v. Hacker*, 93 NCA No. 42, case No. A-91-1207 (not designated for permanent publication). Long filed a petition for further review by this court on several grounds. Long contends that the Court of Appeals erred in finding (1) that the instructions to the jury on alternative methods of surgical procedure were properly given, since alternative procedures to locate the operation site were not in issue; (2) that the trial court properly instructed on "efficient intervening cause," since the surgeon was responsible for any misreading of x rays by the radiologist; and (3) that the verdict was not clearly wrong. We reverse, and remand the cause for a new trial.

## FACTS

In October 1987, Long experienced a sudden onset of severe back and leg pain. Long first met with Hacker, a neurosurgeon, in December 1987. Hacker diagnosed Long with spinal stenosis and nerve root entrapment. Spinal stenosis is a narrowing of the spinal canal which can eventually cause pressure on the nerve roots. Nerve root entrapment is the squeezing of the nerve root as it comes out of the spine.

Hacker initially performed a diskectomy, which failed to provide significant relief from the pain. Hacker recommended that Long undergo a laminectomy. In a laminectomy, bony

elements of the component parts of the vertebrae, i.e., spinous processes, facets, and laminae, are removed. The laminectomy was to be performed at the L4-5 level, i.e., the segment of the spine located between the fourth and fifth lumbar vertebrae. The surgery was performed on January 14, 1988. It is uncontroverted that Hacker operated at the L3-4 level of Long's spine, rather than at L4-5 as intended.

According to the record, the procedures used by Hacker to localize the appropriate level at which to operate were as follows: Hacker approximated the correct level at which L4-5 would be found by locating anatomical landmarks such as scars from the diskectomy and puncture marks from a myelogram. Hacker made an incision at the spinal area approximated as L4-5, where he visually checked for abnormalities and probed the structures with his finger. Thereafter, a needle was placed at what Hacker believed to be the L4-5 level and an x ray was taken of that area. The purpose of this procedure is to ensure, before any important spinal structures are removed, that the surgeon is indeed at the appropriate level of the spine. The needle in the x ray serves as a reference landmark in relation to the desired area of the spine to be operated upon.

After the x ray was processed, it was taken to the operating room by an x-ray technician and placed on a view box. Hacker found the x ray too dark to allow him to see the structures he needed to see in order to localize the operative site. Hacker stated " 'That film's awfully dark' " and asked " 'Where are we?' " An x-ray technician then responded, " 'The radiologist says you're at [L]4-5.' " Based upon that statement by the technician, Hacker then performed the laminectomy at what proved to be L3-4.

After the surgery, Long continued to suffer from back pain. Subsequently, he discovered the operation had been performed at the L3-4 level, rather than at the intended L4-5. Long initiated a medical malpractice action against Hacker in the district court. The jury found in favor of Hacker. The Court of Appeals affirmed the district court's judgment in favor of Hacker. We granted Long's petition for further review.

## ASSIGNMENTS OF ERROR

Long claims the Court of Appeals erred in finding that (1) the instructions to the jury on alternative methods of surgical procedure were properly given, (2) the trial court properly instructed on efficient intervening cause, and (3) the verdict was supported by sufficient evidence.

## ALTERNATIVE METHODS

Long first claims that the Court of Appeals' finding that the jury instructions on alternative methods of surgical procedure were proper is in error. The questioned instruction on alternative methods of surgical procedures stated:

If, among physicians in the community or similar communities more than one method of procedure is recognized as proper, it is not negligence for a doctor to follow a certain method if the method actually employed was one of several which met the required standard of care. However, it is negligence if the method actually employed by the doctor failed to meet the required standard of care.

Long argues that the instruction erroneously implies that more than one method of localization was at issue, when in fact, the only issue was whether Hacker met the required standard of care in implementing the particular method chosen. The Court of Appeals found that the instruction properly stated the law and "clearly indicates that, when choosing among a number of alternative methods, a physician must meet the required standard of care in his or her performance of the method selected." *Long v. Hacker*, 93 NCA No. 42 at 30, case No. A-91-1207 (not designated for permanent publication). We believe the Court of Appeals was wrong in this assertion.

The Court of Appeals cited *Watson v. McNamara*, 229 Neb. 1, 424 N.W.2d 611 (1988), in making its determination. *Watson* involved a medical malpractice action in which the plaintiff claimed that the defendant negligently failed to determine the plaintiff's fetal age, resulting in the plaintiff's premature birth. At issue was a jury instruction similar to the one at issue in this case. The plaintiff's main contention in that case was that the defendant breached the applicable standard of care by failing to

use various methods available to him for determining fetal age. This court stated that a physician is not negligent for simply choosing one recognized method of diagnosis over another, as long as the method chosen conformed with the standard of care. In *Watson*, the issue was whether the method chosen by the defendant from alternative methods available conformed with the standard of care.

In the instant case, Long did not plead, present evidence, or argue that Hacker chose the wrong medical procedure to localize the area to be operated upon. Rather, Long's claim is that Hacker failed to meet the standard of care in the performance of the chosen method.

A trial court must eliminate all matters not in dispute and submit to the jury only the controverted questions of fact upon which the verdict must depend. *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983). Jury instructions should be confined to the issues presented by the pleadings and supported by the evidence. *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

The trial court erred in giving the instruction on alternative methods of localization to the jury. It was not a controverted issue in the case.

We have held that a jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous. *Danner v. Myott Park, Ltd.*, 209 Neb. 103, 306 N.W.2d 580 (1981). As we noted in *Bump*, "It is more than mere probability that an instruction on a matter not an issue in the litigation distracts a jury in its effort to answer legitimate, factual questions raised during trial." 221 Neb. at 690, 380 N.W.2d at 277.

The Court of Appeals found that because evidence was submitted at trial regarding the existence of alternative methods of localization, the instruction was proper. However, alternative methods were not in dispute. The record discloses that the issue, to the extent it was raised, was done so by Hacker, not Long. At trial, the deposition of Long's expert, Dr. Arthur White, was admitted into evidence. On cross-examination, Dr. White was asked whether he had stated in some of his writings that there was no right way to perform spine surgery. On

redirect, Dr. White described several methods of localization, in order to explain his statement made on cross-examination. No testimony regarding which method was best was elicited from Dr. White, nor was such testimony presented anywhere else in the evidence. Under these facts, it was error for the trial court to instruct the jury on alternative methods of surgery. Because the instruction could mislead the jury about the issues in the case, the instruction was prejudicial.

## EFFICIENT INTERVENING CAUSE

Long next claims that the Court of Appeals erred in finding the trial court properly instructed the jury on efficient intervening cause. During the instruction conference, Long objected to instruction No. 13, which related to issues of legal causation. The instruction included definitions of proximate cause, proximate result, efficient intervening cause, and reasonable care. Long's objection was stated as follows:

[Plaintiff's counsel]: Thirteen is cumulative and an unfair emphasis on the duty of the plaintiff to prove negligence. It defines reasonable care the plaintiff is required to prove. And I'm referring to Instruction No. 13 at this time. I object to it for that reason. When we find Instruction No. 6 a definition of the standard of care in a medical malpractice case. No. 7 is a discussion of negligence and its meaning. No. 8, there's discussion of negligence for doctors and there are requirements to be followed —

THE COURT: Which one are you objecting to?

[Plaintiff's counsel]: I'm objecting to No. 13.

THE COURT: Let's see what you're talking about.

[Plaintiff's counsel]: Specifically the last paragraph thereof.

[Defendant's counsel]: What's it say? Well, I would have no objection to eliminating that paragraph since it's been discussed already.

THE COURT: Overruled. It will remain. Seems to me that if you're going to define negligence, proximate cause, proximate result, and you talk about reasonable care that a doctor has to take, you ought to tell them what the hell

reasonable care is. I've done it. If you don't like it, it's too bad.

Long objected to the reasonable care portion of instruction No. 13, not the definition of efficient intervening cause. Generally, an appellate court will dispose of a case on the theories which were presented to the trial court. *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993). *Municipal Energy Agency of Neb. v. City of Cambridge*, 230 Neb. 61, 430 N.W.2d 44 (1988).

The definition of reasonable care which Long objected to provides that reasonable or ordinary care "is that amount or degree of care which ordinary prudence and a proper regard for one's safety and the safety of others would require under the circumstances shown in the evidence." The instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993). Instruction No. 13's definition of reasonable care is correct, was not cumulative, and did not constitute undue prejudice to Long. See *Good v. Jones*, 184 Neb. 454, 168 N.W.2d 520 (1969). Therefore, the instruction was proper, given the lack of objection.

As noted, Long's objection at the hearing was directed to the reasonable care definition. On appeal, Long challenges the section which refers to efficient intervening cause. We have ruled that failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993). Therefore, absent plain error, Long cannot raise the issue for the first time on appeal that the efficient intervening cause definition was improper.

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Plain error may be asserted for the first

time on appeal or be noted by the appellate court on its own motion. *Id.*; *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991).

The instruction on efficient intervening cause was plain error because of our prior decisions in medical malpractice claims, where we held that a head surgeon is ultimately liable for the negligent acts or omissions of others who are assisting in the surgery. See, *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994); *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

In *Swierczek*, we reversed the dismissal of a res ipsa loquitur claim by a patient against an operating oral surgeon, a physician, an anesthesiologist, a nurse anesthetist, and a hospital. The plaintiff in that case was operated upon to remove all her teeth, and she awoke with ulnar neuropathy injuries, causing pain in her hands.

In *Swierczek*, we stated:

> The hospital and surgeon cannot escape liability by attempting to delegate the responsibility for activity in the operating room to the anesthesiologist or other staff present there. The duty of care owed by a physician is nondelegable, which "means that an employer of an independent contractor . . . by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. [Citation omitted.] As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another." *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 213, 376 N.W.2d 301, 309 (1985). In plain language, the law ordinarily does not permit a tort-feasor to escape liability by the act of attempting to transfer responsibility for a nondelegable duty to an independent contractor.

237 Neb. at 482, 466 N.W.2d at 520.

All of the testifying medical experts, as well as Hacker himself, agreed that it is a fundamental and nondelegable duty of an operating surgeon to localize the operative site of the

patient. Hacker contends that he acted within the requisite standard of care by relying on the radiologist's interpretation of the x ray.

The district court instructed the jury on the definition of efficient intervening cause. This definition stated in part:

> "Efficient intervening cause" is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and the injury. A person is not legally responsible for an injury if it would not have resulted but for the interposition of an efficient intervening cause, which he should not have reasonably anticipated.

The instruction on efficient intervening cause is improper because Hacker, as head surgeon, *is* ultimately responsible for any negligent acts or omissions on behalf of himself or the operating team. Hacker might have been negligent in his acts or omissions. The radiologist might have been negligent in his acts or omissions. It is irrelevant in what sequence these negligent acts or omissions might have occurred, because Hacker is ultimately liable for the negligence. Hacker may not escape liability by presenting the negligence of another as an efficient intervening cause.

Therefore, with regard to Hacker and the radiologist, the instruction on efficient intervening cause was improper and should not have been given. The trial court, whether requested or not, has a duty to instruct the jury on issues presented by the pleadings and the evidence. *Burns v. Metz,* 245 Neb. 428, 513 N.W.2d 505 (1994). The jury should have been instructed that Hacker, as head surgeon, was ultimately liable for the negligent acts or omissions of his assistants in the operation, as well as his own negligent acts or omissions.

We note one of Hacker's defenses was that Long's injuries and damages were due to the actions of nonparties. Evidence was presented at trial that subsequent to Hacker's surgery, one Dr. Spil operated on the L4-5 area of Long. Hacker presented evidence to support the contention that Dr. Spil's operation was the cause of Long's present injuries and that, therefore, it was not Hacker's operation that caused the ongoing problems of Long.

However, the instruction on efficient intervening cause excludes causes which could be reasonably anticipated. After Hacker operated on the incorrect level of Long's spine, it would be reasonable to anticipate Long would require another operation at the correct level to address the problem Hacker was to operate on. Thus, the subsequent operation was reasonably anticipated and not an intervening cause within the definition of the proposed instruction.

## RES IPSA LOQUITUR

This appears to be a fact situation where res ipsa loquitur would apply. The doctrine of res ipsa loquitur is that the accident and resulting injuries are such that in the ordinary course of things the accident does not happen if those who have the exclusive management or control of the instrumentality or the agency proximately causing such accident or injuries use proper care. *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991); *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969). When applicable, the essence of the doctrine is that an inference of negligence arises without further proof and that the facts speak for themselves. *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987); *McCall v. St. Joseph's Hospital, supra*; *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954).

In *McCall v. St. Joseph's Hospital*, 184 Neb. at 5, 165 N.W.2d at 88, we stated:

As applied to hospital and malpractice cases, perhaps the best analysis of the evidence necessary to sustain an action for res ipsa loquitur is the case of Horner v. Northern Pacific Beneficial Assn. Hospitals, Inc., 62 Wash. 2d 351, 382 P. 2d 518. In that case the court stated as follows: ". . . [N]egligence may then be inferred in three situations without affirmative proof thereof: (1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by

experts in an esoteric field creates an inference that negligence caused the injuries."

In the instant case, Long underwent an operation on the intended L4-5 level of his spine. Subsequently, he discovered Hacker in fact operated on, and removed structures at, the L3-4 level of his spine. The operation on the wrong area of the spine in the ordinary course of things would not have happened if each of those having charge of the operation used proper care. The surgeon is ultimately responsible.

However, in Nebraska it is clear that if specific acts of negligence are alleged or there is direct evidence of the precise cause of the accident, the doctrine of res ipsa loquitur is not applicable. *Beatty v. Davis, supra.* See, *Lund v. Mangelson,* 183 Neb. 99, 158 N.W.2d 223 (1968); *Security Ins. Co. v. Omaha Coca-Cola Bottling Co., supra.* The doctrine is applicable only where the plaintiff is unable to allege or prove the particular act of negligence which caused the injury. *Id.*

An unsuccessful attempt on the part of the plaintiff to show the specific negligent act which caused his injury does not weaken or displace the presumption of negligence on the part of the defendant arising from the facts of the case by virtue of the rule of res ipsa loquitur. *Id.* It is quite generally agreed that the introduction of some evidence which tends to show the specific acts of negligence on the part of the defendant, but which does not purport to furnish full and complete explanation of the occurrence, does not destroy the inferences which are consistent with the evidence and so does not deprive the plaintiff of the benefit of res ipsa loquitur. *Nuclear Corporation of America v. Lang,* 480 F.2d 990 (8th Cir. 1973) (interpreting the doctrine as applied in Nebraska law).

However, Long's petition alleged that Hacker was negligent as defined by Neb. Rev. Stat. § 44-2810 (Reissue 1988) of the Nebraska Hospital-Medical Liability Act, in the following respects:

(1) In failing to perform all reasonable and necessary act[s] which would have enabled him to locate the L4-5 level of the Plaintiff's spine before he performed the said operative procedure;

(2) In failing to obtain a readable intraoperative x-ray;

(3) In failing to interpret an intraoperative x-ray;

(4) In operating upon the L3-4 level of Plaintiff's spine instead of the L4-5 level of his spine . . . .

While these are specific acts of negligence pled which might foreclose res ipsa loquitur, we note the record shows that these specific acts were only pled in a third amended petition as a result of an order to make more definite and certain. The earlier pleading contained general allegations of negligence which would not foreclose res ipsa loquitur. Because it appears likely the issue will arise again, we have addressed the issue of res ipsa loquitur in the interests of judicial economy. See *Calvert v. Roberts Dairy Co.*, 242 Neb. 664, 496 N.W.2d 491 (1993).

## CONCLUSION

In conclusion, the jury instruction regarding alternative methods was erroneous. The jury instruction on efficient intervening cause was plain error. The district court's failure to instruct the jury properly on these issues was so basic to the cause of action that such error requires a new trial. See *Enyeart v. Swartz*, 218 Neb. 425, 355 N.W.2d 786 (1984). We need not address Long's third assignment of error.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., participating on briefs.