FARMERS AND MERCHANTS BANK, A NEBRASKA BANKING CORPORATION, APPELLEE, V. LEROY GRAMS, APPELLANT, AND ROBERT GRAMS, TRUSTEE OF THE HARRY A. GRAMS TRUST, DOING BUSINESS AS D & C CATTLE CO., APPELLEE.

548 N.W.2d 764

Filed June 7, 1996.   No. S-94-491.

Susan C. Williams, of Murphy, Pederson, Waite & Williams, for appellant.

G. Peter Burger, of Burger, Bennett & Green, P.C., for appellee Robert Grams.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

In this replevin action, the district court, pursuant to verdict, entered a judgment for the delivery of 54 head of cattle by the defendant-appellant, Leroy Grams, and the defendant-appellee, Robert Grams, trustee of the Harry A. Grams Trust, doing business as D & C Cattle Co., to the plaintiff-appellee, Farmers and Merchants Bank. Leroy Grams appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in failing to (1) sustain his motion for summary judgment, (2) direct a verdict in his favor at the close of Farmers and Merchants' evidence, (3) properly instruct the

jury, and (4) enter judgment in his favor notwithstanding the verdict or grant a new trial. Under our authority to regulate the caseloads of the two courts, we, on our own motion, removed the appeal to this court. We now affirm the judgment of the district court.

## II. FACTS

On February 5, 1988, Harry Grams and his son Leroy Grams opened checking account No. 59-820-1 with the bank in the name of D & C Cattle. Both of them were authorized to draw checks on the account, and the father indicated to the loan officer that he and Leroy Grams wanted to purchase cattle through D & C Cattle.

Five days later, on February 10, 1988, the father signed a note in the amount of $2,500 in the name of D & C Cattle. He also signed a financing statement in the name of D & C Cattle which was secured by all of D & C Cattle's livestock. The proceeds of that loan were placed in the newly opened checking account.

Additional loans were made to D & C Cattle on a need basis, whether daily or when checks were being charged to the account. When new loans were needed, the loan officer would contact either the father or Leroy Grams. In every instance but one, the father signed the notes. The proceeds of the new loans would always be placed in checking account No. 59-820-1. On April 3, 1992, the notes were refinanced and rolled into one note, and on February 10, 1993, the financing statement was continued.

None of the checks written on the account were signed by the father; there was only one checkbook, and it was in Leroy Grams' possession. The first few checks in Leroy Grams' possession were not printed with his name and address, although three of them had "D & C Cattle Co." typed in the upper left-hand corner. On one occasion, Leroy Grams wrote "D/C Cattle Co" in the upper left-hand corner of a check written to purchase cattle.

After these checks had been written, Leroy Grams began using checks he had ordered through the bank, bearing the name "Fantasy Acre Ranch" in the upper left-hand corner.

However, the checking account number remained 59-820-1. Fantasy Acre Ranch was the trade name Leroy Grams began using in February 1988. Twenty-three checks were written to purchase cattle between February 6, 1988, and August 14, 1992.

The signature card on file with the bank authorizing both the father and Leroy Grams was never changed, but beginning in October 1988, bank statements on the account were sent to "Fantasy Acre Ranch, c/o Leroy Grams." No notes were ever signed by Fantasy Acre Ranch; all loan proceeds placed in checking account No. 59-820-1 were from notes signed on behalf of D & C Cattle. In addition to the loan proceeds, funds from a variety of sources were deposited into the account. Items other than cattle were purchased with checks drawn on the account.

On May 1, 1991, the bank obtained D & C Cattle's financial statement signed by both the father and Leroy Grams which listed as assets of D & C Cattle 63 stock cows, 19 heifers, 6 bulls, and 59 calves. On April 3, 1992, the bank obtained another D & C Cattle financial statement; it also was signed by both the father and Leroy Grams and listed as assets of D & C Cattle 65 stock cows, 30 heifers, 4 bulls, and 30 calves. On March 10, 1993, the bank obtained a document entitled "Review of Credit" signed by Leroy Grams and listing as assets of D & C Cattle 71 stock cows, 13 calves, 40 feeders, and 3 bulls.

On March 30, 1993, the father died. His other son, Robert Grams, is his successor in interest as trustee of a trust created by the father before his death. After the father's death, the D & C Cattle note went into default and was accelerated. Leroy Grams failed to honor the bank's demanded payment, and this suit followed.

## III. ANALYSIS

### 1. SUMMARY JUDGMENT

In the first assignment of error, Leroy Grams urges it was error to have overruled his motion for summary judgment. But it has long been the rule that except when adverse parties have each moved for summary judgment and the trial court has sus-

tained one of the motions, *Licht v. Association Servs., Inc.*, 236 Neb. 616, 463 N.W.2d 566 (1990), the denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore is not appealable, *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993), and *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*, 237 Neb. 188, 465 N.W.2d 472 (1991). Accordingly, the denial of the motion in question is not appealable.

## 2. MOTION FOR DIRECTED VERDICT

In the second assignment of error, Leroy Grams claims the district court erred by failing to sustain his motion for directed verdict made at the close of the bank's evidence. But the record establishes that after this motion was overruled, Leroy Grams adduced evidence. The rule is that a defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion. *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994); *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994). Leroy Grams therefore waived any error in the ruling on his motion for a directed verdict made at the close of the bank's evidence.

## 3. JURY INSTRUCTIONS

In his third assignment of error, Leroy Grams asserts that the district court erred in not giving his proposed jury instructions on joint ventures and partnerships, trade names, and gifts of bank accounts.

To establish reversible error from a trial court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *David v. DeLeon, ante* p. 109, 547 N.W.2d 726 (1996); *Klawitter v. Lampert*, 248 Neb. 231, 533 N.W.2d 896 (1995); *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994).

### (a) Joint Ventures and Partnerships

Concerning joint ventures and partnerships, the district court instructed as follows:

> A partnership is an association of persons organized as a separate entity to carry on a business for profit. The existence of a partnership requires an agreement of two or more parties, and their intention to create a partnership is to be ascertained from all the evidence and circumstances. A partnership is a contract of two or more persons to place their money, effects, labor, skill or some or all of them, in lawful commerce or business, and to divide the profit or bear the loss in certain proportions.

> A joint venture is in the nature of a partnership, but may exist where persons embark on an undertaking without entering on the prosecution of a business as partners strictly but engage in a common enterprise for their mutual benefit. To constitute a joint venture, there must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control over the agency used therein, though one party may entrust performance to another. The principal distinction between a partnership and a joint venture is that the latter may relate to a single transaction.

> The burden of establishing the existence of either a partnership or joint venture is upon the party asserting that the relationship exists.

Leroy Grams complains that the instruction did not include his proposed language that "[t]he absence of a mutual interest in the profits or benefits is conclusive that a partnership or joint venture does not exist" and that "[t]he mere pooling of property, money, assets, skill or knowledge does not create the relationship." He concludes that the absence of this language minimized the importance of the information reflected in his and his father's tax returns and that the jury was misled into thinking that as the father and Leroy Grams both had access

to the checking account, a joint venture or partnership must have existed.

But it is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in the instructions actually given. *Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995); *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). The substance of the language proposed by Leroy Grams regarding joint ventures and partnerships was contained in the instruction actually given.

However, something more regarding the issue of joint ventures and partnerships needs to be written. The burden is on the plaintiff in replevin to establish facts necessary to recover, and these must be shown to have existed at the time the action was commenced. *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). The gist of a replevin action is the unlawful detention of the property at the inception of the suit and the rights of the parties with respect to possession of the property at that time. *Id*. The cardinal question in every replevin action is whether the plaintiff therein was entitled to the immediate possession of the property replevied at the commencement of the action. *Id*. It was therefore incumbent upon the bank to prove that it was entitled to immediate possession of the cattle in question. Proving the existence of a joint venture or partnership is not one of the elements that needs to be proved. The bank presented evidence that D & C Cattle had signed a financing statement and note, that the proceeds of the note were placed in a checking account with a signature card on file with the name "D & C Cattle," that the note was secured by all livestock of D & C Cattle, that checks had been drawn on the account to purchase cattle and the account had been set up in order for D & C Cattle to purchase cattle, and that the note was in default and demand had been made.

We must also observe that no partnership or joint venture issue was pled by the parties. However, the district court concluded that evidence was lacking as to what specific cattle in the possession of Leroy Grams were owned by the father doing

business as D & C Cattle, and therefore, it instructed the jury on the law relating to such entities.

It is axiomatic that a litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994). Jury instructions are to be confined to the issues presented by the pleadings and supported by the evidence. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). It is error to submit to the jury an issue which is not pleaded in the case. *Rosberg v. Lingenfelter*, 246 Neb. 85, 516 N.W.2d 625 (1994). It is more than a mere probability that an instruction on a matter not an issue in the litigation distracts the jury in its effort to answer legitimate, factual questions raised during trial. *Long, supra*.

On the other hand, jury instructions are subject to harmless error analysis, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *David v. DeLeon, ante* p. 109, 547 N.W.2d 726 (1996); *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

In *Long, supra*, the appellant unsuccessfully objected to the reasonable care portion of a jury instruction at trial. On appeal, he assigned not only that portion of the instruction as error, but also the portion concerning the law of efficient intervening cause. We noted that because the appellant had failed to object at trial to that portion of the instruction, he could not, absent plain error, raise the issue for the first time on appeal. We wrote:

> Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion.

*Id.* at 554-55, 520 N.W.2d at 201. We then ruled that the instruction constituted plain error.

Here, Leroy Grams objected to the instruction, not on the basis that it dealt with issues which were not pled, but because he wanted his own version of an instruction on the law of partnerships and joint ventures. In such a circumstance, there can be no plain error; it can hardly be said that a substantial right of Leroy Grams was prejudiced by the giving of an instruction on an issue he desired the jury to consider, albeit in another form. While in hindsight, because of the problem with identifying the collateral, Leroy Grams may have been better served by objecting to any instruction on partnerships and joint ventures, he certainly did not think so at the time.

Just as a party cannot complain of error which the party has invited the court to commit, *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994), and *Norwest Bank Neb. v. Bowers*, 246 Neb. 83, 516 N.W.2d 623 (1994), neither can plain error be predicated on an action the party has invited the court to commit.

### (b) Trade Names and Gifts

The only discussion in Leroy Grams' brief concerning the instructions pertaining to trade names and gifts of bank accounts is that the instructions he offered in that regard were correct statements of the law and should have been given. That statement, however, falls far short of sustaining his burden to show that the district court's failure in that regard prejudiced him. Moreover, not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995); Neb. Ct. R. of Prac. 9D(1)d (rev. 1996).

### (c) Resolution

For the foregoing reasons, this assignment of error is also without merit.

### 4. JUDGMENT NOTWITHSTANDING VERDICT OR NEW TRIAL

In the fourth assignment of error, Leroy Grams asserts that the district court erred in not entering judgment in his favor notwithstanding the verdict or granting a new trial. He urges

that as a matter of law, there could not be a joint venture or partnership between himself and his father.

### (a) Judgment Notwithstanding Verdict

On a motion for judgment non obstante veredicto, or notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the evidence. *Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995); *Critchfield v. McNamara*, 248 Neb. 39, 532 N.W.2d 287 (1995); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993). A motion for judgment notwithstanding the verdict may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained. *Melcher, supra*.

The financial statements and review of credit signed by Leroy Grams carry with them an inference that the cattle in his possession were those of D & C Cattle. The fact that his father signed 45 notes on behalf of D & C Cattle and that the proceeds were deposited into a bank account to which Leroy Grams had access and which he used to purchase cattle carries an inference that a partnership or joint venture with the father existed. While Leroy Grams' income tax returns show that he claimed the income and losses on the cattle in his possession, they also show that he was making very little, if any, money during the time period in question, yet was able to purchase thousands of dollars' worth of cattle during that same period. These circumstances support an inference that D & C Cattle was financing the purchases, not Leroy Grams.

In order to sustain a motion for judgment notwithstanding the verdict, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Critchfield, supra*. In this case, more than one conclusion could be drawn from the evidence; thus, it was not error for the district court

to overrule Leroy Grams' motion for judgment notwithstanding the verdict.

### (b) New Trial

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hartley v. Guthmann*, 248 Neb. 131, 532 N.W.2d 331 (1995); *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993); *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993). A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Hartley, supra*; *Grover, Inc. v. Papio-Missouri Riv. Nat. Res. Dist.*, 247 Neb. 975, 531 N.W.2d 531 (1995); *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995).

Leroy Grams does not indicate how his rights were prejudiced, other than referring back to his previous assignments of error and the fact that the errors complained of appeared in the record and objections were made thereto.

### (c) Resolution

This assignment of error is as meritless as are the ones which precede it.

### IV. JUDGMENT

Accordingly, as first noted in part I, the judgment of the district court is affirmed.

AFFIRMED.